**FILED**

JAN 3 0 2007

**NANCY** MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LACY DAVIS,III, Plaintiff,
Fed. Reg. #17348-016
FCI Fairton-Satellite Camp
P.O. Box 420
Fairton, New Jersey 08320

v.

FEDERAL BUREAU OF PRISONS
320 First Street, N.W.
Washington, D.C. 20534,

And,

HARLEY LAPPIN, DIRECTOR
Federal Bureau of Prisons
320 First Street, N.W.
Washington, D.C. 20534

CASE NUMBER  1:07CV00201

JUDGE: Rosemary M. Collyer

DECK TYPE: Pro se General Civil

DATE STAMP: 01/30/2007

PLAINTIFF"S ADMINISTRATIVE PROCEDURE ACT
COMPLAINT, 5 U.S.C. § 701 ET SEQ.,
IN CONJUNCTION WITH 28 U.S.C. § 1331
FEDERAL QUESTION

**COMES NOW**, Plaintiff Lacy Davis, III, acting pro se,
and hereby respectfully request this Honorable Court to hold
unlawful the Federal Bureau of Prisons'(hereinafter "B.O.P."
or "Bureau") "Bureau...requirement" contained in Program Stat-

**RECEIVED**

JAN 16 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

-1-

ement § 5330.10, wherein the Bureau defines the term resid-
ential substance abuse treatment under 18 U.S.C. § 3621(e)
to apply only Bureau treatment facilities.  Plaintiff ass-
erts this is not a valid interpretation of Section 3621(e)
because it adds an eligibility requirement not intended by
Congress.  Furthermore, Plaintiff seeks to compel the B.O.P.
to make available to Plaintiff all of the component's of
appropriate substance abuse treatment, as well as to compel
the Bureau to exercise its discretion regarding whether to
grant Plaintiff a reduction in sentence.

## THE COURT HAS JURISDICTION OVER THIS APA ISSUE PURSUANT TO TITLE 28 U.S.C. § 1331

Plaintiff asserts that the United States District
of Columbia has jurisdiction to entertain the instant matter,
as he is not challenging the duration of his confinement.
Specifically, Plaintiff argues that the Bureau has incorrectly
interpreted 18 U.S.C. §§ 3621(b) and (e), because it categor-
ically excludes persons convicted of non-violent offenses who
successfully complete a substance abuse treatment program
at a designated federal contract facility, regardless of the
fact that the non-Bureau designated residential substance abuse
treatment programs matches the treatment mandated by statute,
See 18 U.S.C. § 3621(e)(5)(A), as well as the components

required by the Bureau under P.S. § 5330.10.  <u>See</u> 5 U.S.C.
§§ 702 and 707(1996); <u>See also</u> Lane v. Pena, 518 U.S. 184,
196(1996); <u>Fornaro v. James</u>, 416 F.3d 63, 66 (D.C. Cir. 2005);
<u>Royster-Clark Agribus, Inc. v. Johnson</u>, 391 F. Supp. 2d 21,
25 n.2 (D.D.C. 2005).

Plaintiff respectfully requests this Court to find
that it has jurisdiction to entertain this complaint pursuant
to Title 28 U.S.C. § 1331.

> " ...if plaintiff prevails in the instant case,
> the amount of time he must serve before release
> will not necessarily be reduced.  Rather, all
> that will happen as a result will be that the
> Director of the Bureau of Prisons will exercise
> her discretion whether to grant him a reduction
> in sentence on factors individual to plaintiff...
> **Therefore, plaintiff was not required to bring
> this action in habeas."**  . . . " Plaintiff argues
> that the Bureau has incorrectly interpreted the
> statute... While some deference is accorded the
> Bureau of Prisons in interpreting the statute
> that is to administer, '[t]he [federal] courts...
> have responsibility to resolve issues of statutory
> construction.' **The Court therefore finds that it
> has jurisdiction to review plaintiff's claims
> under the Administrative Procedure Act."**

<u>See</u>  Landry v. Hawk-Sawyer, 123 F. Supp.2d 17, 18-19 (D.D.C.
2000)(citations omitted)(emphasis added);  <u>Megapulse, Inc. v.
Lewis</u>, 672 F.2d 959, 966 n. 30 (D.C. Cir. 1982)(" Even though
the [Administrative Procedures Act] itself technically grants
no jurisdiction, power to review an agency action under the APA
exist under 28 U.S.C. § 1331.")(citing <u>Califano v. Sanders</u>, 430

U.S. 99 (1977));   Robbins v. Reagan, 780 F.2d 37, 42-43
(D.C. Cir. 1985)(Same).

## INTRODUCTION

Plaintiff is a federal prisoner, currently confined
at Federal Correctional Institution-Fairton, Satellite Camp.
Before being transferred to FCI-Fairton, Plaintiff had been
confined to a privately-operated, non-governmental correctional
facility (the GEO Rivers Correctional Institution) pursuant to
a contract between the B.O.P. and the Wackenhut Corrections
Corporation,[1] pursuant to the provisions of 18 U.S.C. § 3621(b).

Importantly, Plaintiff completed a rigorous nine-
month ( 756 hour ) unit-based residential treatment program,
which comported with the treatment required by 18 U.S.C. §§
3621(b) and (e); and the minimum requirements for all residential
substance drug abuse treatment programs in the B.O.P.  However,
the Bureau rejected the Rivers Correctional Institution's resi-
dential substance abuse treatment program as **not** being one that
neither meets the criteria of the B.O.P. policy nor the applic-
able statutes of 18 U.S.C. §§ 3621(b) and (e).  ( See Affidavit
of Lacy Davis, III,-herein after "Affidavit" at 1,¶ ). Plaintiff

---
[1]
    Now Known as "GLOBAL EXPERTS IN OUT SOURCING" ||"GEO GROUP").

avers that after the Court reviews the relevant statutes in their entirety, the Court should find that the B.O.P. has violated 18 U.S.C. § 3621(b) in the instant matter when it denied Plaintiff access to the remaining two components of the Bureau's treatment program as set forth in P.S. § 5330.10; and in doing so, denied Plaintiff the opportunity for consideration concerning the incentives established by Congress under 18 U.S.C. § 3621(e)(2)(B), to wit, a reduction in sentence up to one year upon successful completion of the program.

### AUTHORITY AND FUNCTIONS OF THE RESPONDENT
### WITH RESPECT TO UNITED STATES CODE OFFENDERS

The Bureau of Prisons has necessarily assumed responsibility for Plaintiff's incarceration in accordance with Title 18 U.S.C. § 3621(b) (Sentencing Reform Act of 1984), in which the United States Congress conferred upon the Bureau of Prisons the exclusive authority to designate the place of imprisonment for federal prisoners at any available penal or correctional facility whether maintained by the Federal Government or **otherwise**. See 18 U.S.C. § 3621(b); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 245 (3rd Cir.2005)("...the BOP may place a prisoner where it wishes...").

-5-

On March 7, 2000, the B.O.P. entered into a contract-
ual agreement with the Wackenhut Corrections Corporation ( now
the "GEO GROUP" ) to house Plaintiff and similarily situated
U.S. Code offenders.  See Attachment **A**, original March 7, 2000,
contract.  Upon execution of the contract, the GEO Group and its
employees agreed to adhere to all Federal Laws and regulations,
includes statutes 18 U.S.C. §§ 3621(b), 3621(e)(1), 3621(e)(2)(B)
and 28 CFR 550.56-58.   Specifically, the relevant provision of
the contract expressly states, that:

> "All Services and Programs **SHALL** Comply with the
> SOW; the U.S. Constitution; applicable **FEDERAL**,
> State and Local **LAWS** and Regulations... all
> applicable case law, consent decrees, and Court
> orders." [Emphasis added].

See  Attachment **A**, page **6**, lines **31** - **35**.   The relevant Federal
laws in the instant matter are 18 U.S.C. § 3621(b); 18 U.S.C.
§ 3621(e)(2)(B); 18 U.S.C. § 3621(e)(5)(A); 28 CFR 550.56-58;
and P.S. § 5330.10.[2]   The preceding Federal laws were in effect
(and remain in effect) at the time the B.O.P. and GEO Group

---

[2]

     In 1990 Congress enacted amendments to 18 U.S.C. § 3621 requiring the
Bureau of Prisons to provide every federal prisoner with a substance abuse
problem the opportunity to participate in a treatment program while in cus-
tody.  18 U.S.C. §§ 3621(b) and (e).  In order to encourage prisoners to
seek treatment, § 3621(e)(2)(B) gives the Bureau authority to reduce, by up
to one year, the sentence of prisoners "convicted of non violent offenses"
who successfully complete a treatment program.  See  Cort v. Crabtree, 113
F.3d 1081-82 (9th Cir.1997).

entered into the March 7, 2000, agreement.   Thus, sound Fede-
ral common law principles establish that contracts incorporate
the law in force at the time of the agreement. <u>See</u>   <u>Norfolk &</u>
<u>Western v. AM. Train Dispatchers</u>, 499 U.S. 177, ____, 111 S.ct.
1156, 1164 (1991);   <u>Howe v. Smith</u>, 452 U.S. 473, 475 n.1 (1981);
<u>Ballarini v. Schlage Lock Co.</u>, 100 Cal. App. 2d Supp. 859, 226
P.2d 771, 773-74 (1950)("The settled law of the land at the time
a contract is made becomes a part of it and must be read into it").

     Plaintiff asserts that the Bureau of Prisons and the
GEO Group is bound by contract to comply with 18 U.S.C. §§
3621(b) and (e); because by execution of the contract, the Bur-
eau and GEO/RIVERS employees agreed to adhere to all Federal
Laws.<u>3</u>   <u>See</u> Attachment **A**, page **6**, lines **31 - 35**.   Thus, the
GEO Group was obligated by contract to provide residential sub-
stance abuse treatment programs for Federal prisoners in its

---

3

     Plaintiff asserts that the contract makes the employees of the GEO
Group Federal actors because their actions are governed by Federal laws in
respect to the operation and function of its residential substance abuse
treatment programs.   <u>See</u> Attachment **A**, page **5**, lines **12 - 18** ("The con-
tractor **shall** ensure that the institution is operated in a manner consist-
ent with the mission of the BOP.  It is the mission of the BOP to... assist
offenders in becoming law-abiding citizens.")(Original Contract Number
J1PCc-005) (emphasis added);   <u>See also</u> <u>Evans v. Newton</u>, 382 U.S. 296, 299
(1966)("When private individuals or groups are endowed by the state with
powers or functions governmental in nature, they become agencies or instru-
mentalities of the state...");   <u>Adickes v. S.H. Kness & Co.</u>, 398 U.S. 144,
152 (1970)("[t]o act 'under color' of law does not require that accused be
an officer of the state.")(internal quotation marks and citations omitted);
<u>See also</u> <u>Infra</u>, at **22 - 23.**   Moreover, "[n]o inmate shall be admitted to
[Rivers Correctional Institution], or released from institution custody
without prior BOP approval." Attachment **A**, page **19**, lines **30 - 31**.

custody which comports with the treatment required by 18 U.S.C. §§ 3621(b) and (e), and the minimum requirements for all Bureau drug abuse programs set forth in P.S. § 5330.10.

## EXHAUSTION OF REMEDIES

On November 18, 2003, the Bureau of Prisons diagnosed Plaintiff as being drug and alcohol dependent in conjunction with recommending further treatment. (See Affidavit at 1, ¶¶ 3 and 4).

On September 14, 2000, Plaintiff sucessfully completed the Bureau of Prisons 40 hour non-residential drug abuse program. (See Id., at 1, ¶3).

On or about October 18, 2004, Plaintiff's case manager at Rivers Correctional Institution informed Plaintiff that he met the criteria of eligibility under the applicable statute, 18 U.S.C. § 3621(e)(2)(B), and the applicable regulation, 28 CFR § 550.56-58, to participate in the 756 hour residential substance abuse treatment program.  Plaintiff was then placed in the unit-based treatment program that was separated from the general pop-uation.

On June 27, 2005, Plaintiff sucessfully completed the GEO/Rivers Correctional Institutions residential substance abuse treatment program which consisted of nine months (756 hours) of individual group activities directed at his substance abuse

problems. (See Id. at 1, ¶6).

On or about September 12, 2005, Plaintiff was placed in the institutional transitional treatment program at Rivers Correctional Institution called "New Begining After care," in accordance with P.S. § 5330.10, Chapter 5, section 5.2.1.

On November 29, 2005, Plaintiff submitted a request to staff (BP-148.055) form to Ms. A Gillus the "New Begining" Drug Abuse Coordinator to place a copy of his Certificate of Achievment to be placed in his central file and to make the appropriate changes to Plaintiff's "DRG" program assignment in accord with P.S. § 5330.10. Further Plaintiff requested to have Ms. A Gillus submit an application for consideration for early release to the Director of the B.O.P.. Ms. Gillus failed to answer this request to staff.

Plaintiff thereafter initiated and exhausted **all** of his available Administrative Remedies, as enumerated as Follows:

      **A.**    A January 6, 2006, GEO/RCI Attempt At Informal Resolution. (See Affidavit at 2, ¶9).

      **B.**    A January 31, 2006, RCI Step-1 Administrative complaint. (See Id. at 2, ¶9).

      **C.**    A March 10, 2006, RCI Step-2 Administrative complaint. (See Id. at 2, ¶9).

      **D.**    A May 16, 2006, BP-148 (Request to Staff) employed as a complaint to T. Christensen. (See Id. at 2, ¶9).

-9-

> **E.**    A May 24, 2006, BP-230 Regional Admini-
> strative Remedy Appeal. (See Id. at 2, ¶9).
>
> **F.**    A July 31, 2006, BP-231 Central Office
> Administrative Remedy Appeal. (See Id. at 2, ¶9).

Plaintiff avers that he has exhausted all available administrative
remedies regarding his right to have the B.O.P. make available the
remaining two components of the Bureau's Residential Drug Abuse
Program and for the BOP to exercise its discretion whether to
consider Plaintiff for early release under 18 U.S.C. §
3621(e)(2)(B), in accordance with 28 CFR §§ 542.12 through 542.18.
See  Simmat v. BOP, 413 F.3d 1225, 1236-38 (10th Cir. 2005);.
Irwin v. Hawk, 40 F.3d 347,.349 n.2 (11th.Cir. 1994).. Therefore,
this complaint should be granted.

## THE ISSUES PRESENTED

1).    WHETHER THE B.O.P.'S INTERPRETATION OF 18 U.S.C. § 3621,
DEFINING THE TERM "RESIDENTIAL SUBSTANCE ABUSE TREATMENT"
TO MEAN EXCLUSIVELY BUREAU TREATMENT FACILITIES  IS A
PERMISSIBLE CONSTRUCTION OF THE STATUTE ?

2).    WHETHER STATUTE 18 U.S.C. § 3621**(b)**, CONFERS UPON THE
BUREAU A DUTY TO MAKE AVAILABLE THE REMAINING TWO COMP-
ONENTS OF THE BUREAU OF PRISONS ( RDAP ) ?

3).    WHETHER THE BUREAU HAS A DUTY TO EXERCISE ITS DISCRETION
WHETHER TO CONSIDER PLAINTIFF FOR EARLY RELEASE AFTER
HIS SUCCESSFUL COMPLETION OF ALL THE COMPONENTS OF THE
BUREAU'S RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM ?

## STATEMENT OF FACTS

THE UNDERLYING OFFENSE

On October 5, 1994, a federal grand jury in the East-
ern District of Virginia, Alexandria Division, returned a one-
count indictment charging Plaintiff and co-defendant Cedric
Williams with the intent to distribute fifty (50) grams or more
of cocaine base, commonly known as "Crack" Cocaine, and aiding
and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C.
§ 2.

On October 17, 1994, co-defendant Williams pled guilty
to a one-count criminal information charging that he knowingly,
willfully, and intentionally conspired with Plaintiff to possess
with intent to distribute fifty (50) grams or more of cocaine
base, in violation of 21 U.S.C. § 846 and 21 U.S.C. §§
841(b)(1)(A)(iii), 841(a)(1).

On November 2, 1994, a Federal Grand Jury in the Alex-
andria Division of the Eastern District of Virginia returned a
two-count indictment against Plaintiff, charging, to wit, that
he conspired with Williams and others to possess with intent to
distribute fifty (50) grams or more of cocaine base in violation
of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii)(count one); and that
he possessed with the intent to distribute fifty (50) grams or
more of cocaine base in violation of 21 U.S.C. § 841(b)(1)(A)(iii)
(count two).

On June 13, 1995, a jury found Plaintiff guilty of

-11-

Count One of the indictment.   The jury was unable to reach a verdict on Count Two and the charge was dissmissed upon the Government's motion.

On September 15, 1995, the District Court sentenced Plaintiff to a prison term of two hundred and forty months and ten years supervised release.   Plainitff was required to pay a fifty dollar ($50.00) special assessment fee.

## ARGUMENT

ISSUE I.

THE B.O.P.'S ERRONEOUS INTERPRETATION OF THE TERM "RESIDENTIAL SUBSTANCE ABUSE TREATMENT" THAT IT MEANS EXCLUSIVELY TREATMENT AT A BUREAU TREATMENT FACILITY VIOLATES THE PLAIN STATUTORY LANGUAGE OF 18 U.S.C. §§ 3621(e)(5)(A), 3621(e)(1), and 3621(b) TOGETHER AS A WHOLE; WHICH MAKES THE BUREAU'S USE OF THIS ERRONEOUS INTERPRETATION TO DENY PLAINTIFF THE REMAINING TWO COMPONENTS OF DRUG TREATMENT IN CONJUNCTION WITH CONSIDERATION FOR EARLY RELEASE UNDER § 3621(e)(2)(B), AN ABUSE OF DISCRETION.

On October 4, 2006, the Bureau denied Plaintiff's request for consideration for early release based on its erroneous interpretation that the Rivers Correctional Institutions

-12-

residential drug abuse treatment program does not meet the
criteria required by policy (i.e., a Bureau of Prison treatment
facility requirement; a minimum of 500 hour requirement; and
a requirement that the unit-based treatment be in an envior-
ment separated from the general population outlined in P.S.
§ 5330.10, Chapter 6, section 6.1.1(4)), and the applicable
statute of 18 U.S.C. § 3621(e). See Affidavit at 2, ¶9.   In
addition, the Bureau has denied Plaintiff's request for consid-
eration for early release on the grounds that he has not succ-
essfully completed the remaining two components of the Bureau's
residential drug abuse treatment program.  See Id. at 2, ¶9.

    In the Bureau of Prisons program statement § 5330.10,
Chapter 6, section 6.1.1(4), Plaintiff claims that the Bureau
has incorrectly interpreted Title 18 U.S.C. § 3621(e), when it
denied him consideration for early release based on the erroneous
conclusion that the term "residential substance abuse treatment"
under 18 U.S.C. § 3621(e) exclusively means a "Bureau of Prison
Treatment Facility" irrespective of the fact that Congress intend-
ed all eligible non-violent prisoners who successfully complete
a residential substance abuse treatment program (whether maint-
ained by the B.O.P. or Otherwise) that matches the requirements
set by Congress under 18 U.S.C. § 3621(e)(5)(A), to be eligible
for consideration for early release under 18 U.S.C. § 3621(e)(2)(B).

Specifically, program statement § 5330.10 reads that:

> "...an inmate may or may not be qualified for early release under 18 U.S.C. § 3621(e) in the following circumstances:
>
> . . .
>
>> (4) The inmate has successfully completed all parts of the Bureau's residential drug abuse treatment program..."

See  P.S. § 5330.10, Chapter 6, §§ 6.1.1 and 6.1.1(4)(1997). While some deference is accorded the BOP in interpreting the statutes that it is to administer, "[t]he [federal] courts... have responsibility to resolve issues of statutory construction." Downey v. Crabtree, 100 F.3d 662, 666 (9th Cir. 1996); Reno v. Koray, 515 U.S. 50, 61 (1995)("Bureau of Prisons Program Statement's entitled to less deference because not promulgated under APA").   It is an accepted rule of statutory construction that the Court look first to the plain language of the statute to determine its meaning.  See  Fowler v. U.S. Parole Comm'n, 94 F.3d 835, 838 (3rd Cir. 1996)("The interpretation of any statute obviously begins with an analysis of the text itself."). Therefore, Plaintiff respectfully request the Court to begin its analysis with statute 18 U.S.C. § 3621(e)(5)(A), where Congress elected not to include the term "Bureau of Prisons" in its definition section.  Specifically, Congress defines the term residential substance treatment in Title 18 U.S.C. § 3621, as:

> "(A) the term "residential substance abuse treatment" means a course of individual and group activities, lasting between 6

-14-

and 12 months in residential treatment facilities set apart
from the general population--
>    (i) directed at the substance abuse problems of the
>    prisoner; and
>    (ii) intended to develop the prisoners cognitive, behav-
>    orial, social, vocational, and other skills so as to
>    solve the prisoners substance abuse and related problems;
>    (iii) which may include the use of pharmacoptherapies, if
>    appropriate, that may extend beyond the treatment period.

See 18 U.S.C. § 3621(e)(5)(A)(2006).

Nowhere in the plain text of 18 U.S.C. § 3621(e)(5)(A)
does the term "Bureau of Prisons" appear to make it plain that
Congress intended for the term "residential substance abuse
treatment" for the purposes of statute 18 U.S.C. § 3621(e)(2)(B),
to be limited to "Bureau of Prison treatment facilities." If
the statute § 3621 defines the term "residential substance abuse
treatment" without any Bureau treatment facility requirements in
its definitional section, "then that definition controls the
meaning of the term where ever it appears in a statute" ... "As
a general rule [a] definition which declares what a term means
... excludes any meaning that is not stated." Robinson v. Shell
Oil Co., 70 F.3d 325, 328 (4th Cir. 1995)(quoting 2A George
Sutherland, Statutes and Statutory Construction § 47.07, at 152
(5th Ed. 1992).

Had Congress intended for the term "residential sub-
stance abuse treatment" to denote only Bureau treatment facili-
ties, it simply would have so provided by including the phrase
"Bureau of Prisons" in the plain text of statute 18 U.S.C. §

3621(e)(5)(A).  See National RailRoad Passenger Corporation v.
Boston Maine Corp., 503 U.S. 407, 417 (1992)("Of Course, a
reviewing court should not defer to an agency position which
is contrary to an intent of Congress expressed in unambiguous
terms").  Plaintiff thus asserts that the district court should
find that the Bureau's interpretation of the term residential
substance abuse treatment found in P.S. § 5330.10, Chapter 6,
section 6.1.1(4) invalid because the plain language of statutes
explicated in 18 U.S.C. §§ 3621(b), 3621(e)(1) and 3621(e)(5)(A)
as a whole unambiguosly prohibits the Bureau's interpretation.
See  In Re Thompson, 418 F.3d 362, 368 (3rd Cir. 2005)("In
expounding a statute, we must not be guided by a single sentence
or member of a sentence, but look to the provisions of the law,
and to it's object and policy.")(citing Kelly v. Robinson, 479
U.S. 36, 43 (1986); Gustafson v. Alloyd Co., 513 U.S. 561, 569
(1995)(SAME).

        Significantly, Title 18 U.S.C. § 3621(b) reads as
follows:

> "18 U.S.C. § 3621(b) Place of imprisonment.---The Bureau of
> Prisons shall designate the place of the prisoners imprison-
> ment.  The Bureau may designate any available penal or
> correctional facility that meets minimum standards of health
> and habitability established by the Bureau, **whether main-
> tained by the Federal Government or otherwise** and whether
> within or without the judicial district in which the per-
> son was convicted, that the Bureau determines to be appro-
> riate and suitable, considering----
>      (1) the resources of the facility contemplated;
>      (2) the nature and circumstances of the offense;
>      (3) the history and characteristics of the prisoner;

-16-

(4) any statement by the court that imposed the sent-
ence---
    (A) concerning the purposes for which the sent-
    ence to imprisonment was determined to be warra-
    nted; or,
    (B) recommending a type of penal or correctional
    facility as appropriate; and,
(5) any pertinent policy statement issued by the sent-
encing Commission pursuant to section 994(a)(2) of
Title 28.

In designating the place of imprisonment or making transfers
under this subsection, **there shall be no favoritism given to
prisoners of high social or economic status.** The Bureau may
at any time, having regard for the same matters, direct the
transfer of a prisoner from one penal or correctional facil-
ity to another. **The Bureau shall make available appropriate
substance abuse treatment for each prisoner the Bureau determ-
ines has a treatable condition of substance addiction or
abuse.**

See  18 U.S.C. § 3621(b) (emphasis added).

In drafting 18 U.S.C. § 3621(b), Congress **included** the
term "substance abuse treatment" which meaning Plainitff asserts
can be drawn from the context within which it is used.  See
Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 245 (3rd
Cir. 2005)("noting the 'fundamental principle of statutory con-
struction... that the meaning of a word cannot be determined in
isolation, but must be drawn from the context it is used.'").
Therefore, if the District Court construes 18 U.S.C. § 3621(b)
together with 18 U.S.C. § 3621(e)(1), the court should find Con-
gress intended the terms "Substance abuse treatment" and "resi-
dential substance abuse treatment" to have the same meaning.

-17-

Title 18 U.S.C. § 3621(e)(1) reads:

> "(e) Substance Abuse Treatment. (1) Phase-in. In order to carry out the **requirement** of the **last sentence of subsection (b) of this section, that every prisoner with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment,** the Bureau of Prisons **shall**, subject to the availability of appropriations, **provide residential substance abuse treatment** (and make arrangement's for appropriate aftercare)..."

See  18 U.S.C. § 3621(e)(1)(1997).  In the plain language of

18 U.S.C. § 3621(e)(1), Congress used the terms "substance abuse

treatment" and "residential substance abuse treatment" interchang-

eably when Congress mandated the Bureau to provide residential

substance abuse treatment when implementing the requirements of

the last sentence of the incorporated subsection (b) of § 3621(b).

See id.

     Plaintiff maintains that a commonsense reading of the

text of § 3621(b)----especially when combined with the plain

language of § 3621(e)(1)----should compel the conclusion that

the noted terms have the same meaning (i.e., for the term

"Substance abuse treatment" to have the same meaning in accord

with the definition of the term residential substance abuse

treatment under 18 U.S.C. § 3621(e)(5)(A)). See United States

v. Morton, 467 U.S. 822, 828 (1984)("[w]e do not construe stat-

utory phrases in isolation; we read statutes as a whole.").

Moreover, Congress included the term shall in 18 U.S.C. § 3621(b)

to confer a duty on the Bureau to make available all components

of residential substance abuse treatment, as defined in §

3621(e)(5)(A), for each eligible non-violent federal prisoner regardless of where the Bureau chose to designate as the place of imprisonment (i.e., whether maintained by the Federal Government or otherwise).[3] See Supra, at 16 - 17; See also Anderson v. Yungkau, 329 U.S. 482, 485 (1947)("The word 'shall' is ordinarily 'The language of command'"); Exportal Ltda. v. United States, 902 F.2d 45, 50 (D.C. Cir. 1990)("The word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive.").

    As indicated above, Congress did not intend the term

---

[3]
    This fact is supported by Congress's choice to insert the last sentence in subsection (b) of statute 18 U.S.C. § 3621----mandating that the BOP provide substance abuse treatment while exercising its authority to transfer a prisoner. 18 U.S.C. § 3621(b). Furthermore, before the enactment of BOP program statement § 5330.10, Congress intended to grant Federal Government or otherwise; and no where in the plain language of 18 U.S.C. § 3621, as a whole did Congress intend to end this practice. The Bureau before enacting regulation 28 CFR § 550.58(b)(2), understood this conclusion reached above. "Eligible inmates who previously completed a residential drug abuse treatment program (**or which matches the treatment required by statute**) must notify the institutions drug abuse coordinator via request to staff in order to be considered for early release." 28 CFR § 550.58(b)(2). See also Goldstein v. S.E.C., 451 F.3d 873, 878 (D.C. Cir.2006)("...words of the statute should be read in context, the statutes place in the overall statutory scheme should be considered, and the problems Congress sought to solve should be taken into account to determine whether Congress has forclosed the agency's interpretation.")(citing PDK Labs, Inc. v. DEA, 362 F.3d 786, 796 (D.C. Cir.2004)("PDK I")(internal quotation marks omitted).

"residential substance abuse treatment" to exclusively mean
Bureau treatment facilities;and for the Bureau to deny non-
violent federal prisoners(who successfully completes 500
hours of residential treatment at non federal facilities) from
access to transitional treatment.    Therefore, the district
court should find that the Bureau's interpretation in the
instant matter expands the scope of the definition of the term
"residential substance abuse treatment" beyond that set by Con-
gress under 18 U.S.C. §§ 3621(b), 3621(e)(1), 3621(e)(5)(A).
"[I]n any conflict between a statute and a regulation purporting
to implement the statutes provisions, the regulation must, of
course, give way." McComb v. Wambaugh, 934 F.2d 474, 481 (3rd
Cir. 1991); National Treasury Employees Union v. Chertoff, 452
F.3d 839, 864 (D.C. Cir. 2006)("An agency construction of a
statute cannot survive judicial review, however, if a contested
regulation reflects an action that is inconsistent with the
agency's authority.    It does not matter whether the unlawful
action arises because the disputed regulation defies the plain
language of a statute...").[4]

------

[4]

     The Bureau's position in the instant matter conflicts with the overall
statutory scheme of 18 U.S.C. § 3621, because not only does the BOP deny
Plaintiff access to transitional treatment but it also gives **favoritism** to
federal prisoners in Bureau treatment facilities.    "...[T]here **shall be no
favoritism given to prisoners...**" 18 U.S.C. § 3621(b) (emphasis added).    The
B.O.P.'s position is inconsistent with the letter and spirit of the Bureau's
authority derived from §§ 3621(b) and (e).    See  Gose v. Postal Service, 451
F.3d 831, 836 (Fed. Cir. 2006)("We have held that '[a]n abuse of discretion
occurs where the decision is based on an erroneous interpretation of the
law...'")(quoting Lacauera v. Dudas, 441 F.3d 1380, 1383 (Fed. Cir. 2006)
(internal quotations omitted).

The program elements of the GEO/Rivers Correctional
Institution's unit-based nine month (756 hour) residential
substance abuse treatment program reviewed under the light of
18 U.S.C. § 3621(e)(5)(A) meets the criteria required by Bureau
policy and the applicable statute.[5]   Importantly, the GEO/
Rivers Correctional Institution defines its residential subst-
ance abuse treatment program as follows:

### THERAPEUTIC COMMUNITY

"A Therapeutic Community is a positive enviorment where
people who have similar problems (drug and alcohol abuse)
that live and work together to change their lives"

See Affidavit's Attachment **D ONE** at page 6.

"The New Begining Treatment Program is nine(9) to twelve(12)
month's and is presented in three phases.  It is located at
the Rivers Correctional Institution Operated by the GEO
Group.  Each inmate is assigned to a **PARTICULAR POD** in which
to live and attend therapeutic classes.  Inmates enter the
first phase (orientation) and progress through the second
(main-treatment) and third (re-entry) phases by successful
participation in treatment activities and with staff reco-
mmendations."

See Affidavit's Attachment **D ONE** at page 6.

---

[5]

The Criteria required by Bureau policy is defined in P.S. § 5330.10
as: "Unit-based Housing. All residential drug abuse treatment program part-
icipants must reside together in the same unit.  This is critical to build-
ing a sense of community and cohesiveness among participants and staff and
promotes comformity and compliance with program rules and philosophy.  The
social and Physical enviorment of all residential treatment unit's should
reinforce program goals and objectives at all times."  See P.S. § 5330.10,
Chapter 5, sections 5.3 and 5.3.1 (1996);  See also B.O.P. Residential
Treatment Program Handbook (Volumes 1 - 5).   Importantly, if the District
Court reviews the Rivers Residential Substance Abuse Treatment Program in
the Affidavit's Attachment D ONE, at 6 and 8 under the light of the comp-
onents of the Bureau of Prisons RDAP it will find that it meets the criteria
outlined under P.S. 5330.10; making the Bureau's denial of Plaintiff's req-
uest an abuse of discretion.  See PPL Wallingford Energy LLC v. F.E.R.C.,
419 F.3d 1194, 1198 (D.C. Cir. 2005).

The program elements of the Rivers Correctional Institutions residential drug abuse treatment program meets the criteria required by 18 U.S.C. § 3621(e)(5)(A) because it is a treatment facility that is set apart from the general population with a course of individual and group activities; lasts between 6 and 12 months' and is directed at the substance abuse problems of the prisoner. See Supra, at 14 - 15. See also Affidavit's Attachment **D ONE**. There is thus a sufficiently close nexus between the RDAP designated at a B.O.P. facility and the GEO/Rivers Correctional Institution's residential treatment program called New Begining, so that the successful completion of the latter by a non-violent federal prisoner may be fairly treated as that of the B.O.P. designated facility itself. See Supra, foot note 4, at 20.[6]

Moreover, the regional DAP coordinator for the B.O.P. is very knowledgeable concerning the events and operations in all areas of the GEO/Rivers Correctional Institution's treatment program called New Begining through the B.O.P. on-site staff

---

[6]

The program structure of the Bureau of Prison's residential substance abuse treatment program is the same as the Rivers Correctional Institution's treatment program because Bureau policy defines a residential drug abuse treatment program as a unit-based residential program lasting between six-to-12 months (minimum 500 hours), See also Affidavit's Attachment **D ONE** at page 8.

designated at Rivers Correctional Institution.  This over-sight
includes ensuring contract compliance that all services and
programs concerning drug education shall Comply with all appl-
icable Federal Laws, regulations and policy.  See  Correctional
Services Corp. v. Malesko,  534 U.S. 61, 71 n.5 (2001)("the
BOP [has] oversight and monitoring of its private contract
facilities")(citing Brief for the U.S. as amicus curiae, 4 - 5,
24 - 26);  See also Supra, at pages 5 - 8;  See also  P.S.
§ 5330.10, Chapter 1, section 1.3(c)(Regional Coordinators)
("Regional Coordinators, under the supervision of the Regional
Psychology Services Administrators, are responsible for over-
sight and coordination of institutional drug abuse programming
in their respective regions...").  Plaintiff, avers that his
successful completion of the Rivers Correctional Institutions
residential substance abuse treatment program in accord with
P.S. § 5330.10, Chapter 6, section 6.1.1(4), for consideration
for early release pursuant to 18 U.S.C. § 3621(e)(2)(B).


ISSUE II.

> THE BOP'S USE OF ITS ERRONEOUS INTERPRETATION DENIED
> PLAINTIFF ACCESS TO THE REMAINING TWO COMPONENTS OF
> THE BUREAU OF PRISONS RESIDENTIAL DRUG ABUSE TREATMENT

PROGRAM, WHICH IS A VIOLATION OF THE BUREAU'S DUTY
UNDER TITLE 18 U.S.C. §§ 3621(b) AND (e)(1).

Plaintiff now asserts  that the Bureau's reliance
on its erroneous interpretation to hold that the Rivers Corr-
ectional Insititution's Residential Drug Abuse Treatment Pro-
gram does not meet the criteria of the first component of the
Bureau of Prisons residential drug abuse treatment program de-
nies Plaintiff access to the remaining two components of the
Bureau's treatment program, i.e., transitional treatment.

Specifically, the three component's of the Bureau of
Prisons residential drug abuse program are as follows:

> "5.2.1 <u>Program Components</u>.  The entire residential drug
> abuse treatment program in the Bureau consist of **three**
> **components.**  Successful completion of the residential drug
> abuse program occurs when the inmate has successfully
> completed each of three components:
>> [1] the unit-based residential program lasting be-
>> tween six-to-12 months (minimum 500 hours)
>>
>> [2] the institution transition phase, which requires
>> participation for a minimum of one hour a month over
>> a period of 12 months after successfully completing
>> the unit-based program (however, if an inmate is
>> schedule for a transfer to a community-based program
>> before he or she can begin or complete the institution
>> transitional services component, this component is
>> not required); and
>>
>> [3] the community transitional services, lasting up
>> to six months when the inmate is transfered to a com-
>> munity corrections center or to home confinement."

<u>See</u>  P.S. § 5330.10, Chapter 5, section 5.2.1 (1996) (emphasis
added).

In program statement § 5330.10, Chapter 5, section 5.2.1(i.e., the first component), the Bureau requires that the unit-based residential drug program last between six-twelve month's(minimum 500 hours), which Plaintiff avers the Rivers Correctional Institutions residential drug abuse treatment program satisfies. See Supra, foot note **6,** at page 22. By extension, Plaintiff thus has a statutory right under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3621(e)(1) to participate in the remaining two components of the Bureau's residential drug abuse program (after the Bureau tied the two components to statute 18 U.S.C. § 3621(e)(2)(B)). See Supra, at pages 16 - 20.

This statutory right includes all phases and components of substance abuse treatment( residential or not ), including AFTERCARE. See 18 U.S.C. § 3621(e)(1) (emphasis added). Therefore, the District Court should find that the B.O.P.'s position in the instant matter is arbitrary and capricious because Congress when enacting the governing statutes of 18 U.S.C. § 3621(b) and 18 U.S.C. § 3621(e)(1), unambiguously prohibited the Bureau from denying non-violent Federal prisoners that the Bureau determines to have a treatable condition of

-25-

substance abuse[7] access to treatment under P.S. § 5330.10.[8]

See Rublee v. Fleming, 160 F.3d 213, 214 (5th Cir. 1998)("Section 3621(b) provides that '[t]he Bureau **shall** make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. 18 U.S.C. § 3621(b). Section 3621(e)(1) states that in order for the BOP to carry out this requirement, it 'shall ...provide residential substance abuse treatment (and make arrangements for appropriate after care)'")(citing statutes

---

[7]

Plaintiff is an eligible prisoner for substance abuse treatment according to the criteria outlined in 18 U.S.C. § 3621(e)(5)(B). See Supra at **8**.

[8]

In 28 CFR § 550.58(a)(1)v) and 61 Fed. Reg. 25,121(1996) the BOP exercised its discretion under 18 U.S.C. § 3621(e)(2)(B), to expand the definition of the term "residential substance abuse treatment" to include community based treatment for the purposes of the incentives under the applicable statute. See McClean v. Crabtree, 173 F.3d 1176, 1183 (9th Cir. 1999)("The BOP's initial interim rule merely required one hour of transitional programming per month after a prisoner completed residential substance abuse treatment...the community requirement clearly enhances transitional programming by allowing prisoners to be evaluated while they are reintergrated into the community...") (citations omitted).

The B.O.P. tied it's community-based treatment requirement to statute 18 U.S.C. § 3621(e)(2)(B) under its authority given by Congress for the Bureau to regulate the treatment program. See id. The term "treatment program" under 18 U.S.C. § 3621(e)(2)(B), has the same meaning as the interchangeable terms "substance abuse treatment" and "residential substance abuse treatment" under statutes 18 U.S.C. § 3621(b) and 18 U.S.C. § 3621(e)(1). The fundamental principle of statutory construction compels the conclusion above because the meaning of the word ["treatment program"] "cannot be determined in isolation, but ... must be drawn from the context in which it is used." Deal v. United States, 508 U.S. 129, 132 (1993); See also Supra at pages 16 - 20.

Therefore, the District Court, after employing the cannons of statutory construction, should find the community-based treatment requirement under 28 CFR § 550.58 and P.S. § 5330.10, falls under the B.O.P.'s statutory **duty** to make available all substance abuse treatment programs in accord with 18 U.S.C. § 3621(b) and 18 U.S.C. § 3621(e).

-26-

18 U.S.C. § 3621(b) and 18 U.S.C. § 3621(e)(1)).[9]    Therefore,

the B.O.P. is obligated pursuant to 18 U.S.C. § 3621(b) and

18 U.S.C. § 3621(e)(1) to transfer Plaintiff to a Community

Corrections Center (CCC) or Home confinement in order that he

may have access to transitional services because "[t]he BOP can-

not 'duplicate within the institution the enviorment of comm-

unity-based  transitional services.'" <u>McLean v. Crabtree</u>, 173

F.3d 1176, 1183 (9th Cir. 1999)(citing 61 Fed.Reg. 25121).[10]

---

[9]

    Congress elected to include the word **"shall"** in 18 U.S.C. § 3621(b) and
18 U.S.C. § 3621(e)(1). "The word 'shall' is ordinarily 'The language of
command.'" Anderson v. Yungkau, 329 U.S. 482, 485 (1947).

[10]

    Plaintiff is presently incarcerated at FCI Fairton <u>CAMP</u> a Minimum Security
institution. The <u>warden</u> has the authority to grant weekend passes, overnight
passes or furloughs in order to provide Plaintiff with transitional programming,
i.e., community-based treatment. <u>See</u> 18 U.S.C. § 3622(Temporary release of a
prisoner)("The Bureau of Prisons <u>may</u> release a prisoner from the place of im-
prisonment for a limited period ... for the purpose of----(b) participat[ing]
in a training or educational program in the community while continuing in off-
icial detention at the prison facility..."); <u>See also</u> P.S. § 5280.08("The
furlough program of the Bureau of Prisons is <u>intended</u> to help the inmate to
attain correctional goals." . . . "The authority to approve furlough's in the
Bureau of Prisons institutions is delegated to the Warden or Acting Warden.
This authority may not be further delegated.  An inmate may be authorized a
furlough ... To participate in selected educational, social, civic, religious,
and recreational activities which will facilitate release transition..." §
5280.08,section 7(a)(4) ).
    Moreover, both places of imprisonment whether a minimum institution
(FCI Fairton CAMP) or community institution (CCC or Home Confinement), have
phases of corrections that are focused on reintergrating an inmate into society,
thus a furlough in the instant matter is consistent with Congress's goal of
providing eligible prisoners with after care treatment in accord with 18 U.S.C.
§ 3621(e)(5)(C). <u>See</u> <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235, 243
(3rd Cir. 2005); <u>Venegas v. Henman</u>, 126 F.3d 760, 763 (5th Cir. 1997)("The
stated purpose underlying section 3621(e) is to reduce recidivism, which in turn
eases prison overcrowding and ultimately prevents crime.")(citing H.R. Rep.103-
320, 103rd Cong., 1st Sess. (1993)).

See Service v. Dulles, 354 U.S. 363, 388 (1957)("While it is of course true ... the [defendant[s]] was not obligated to impose upon theirselves these more rigorous substantive and procedural standards, ... having done so [they] could not, so long as the regulations remained unchanged, proceed without regard to them.").


ISSUE III.

> THE BUREAU OF PRISONS ACCORDING TO THE PROVISIONS OF
> THE MARCH 7, 2000, CONTRACTUAL AGREEMENT WITH THE
> GEO GROUP/RIVERS CORRECTIONAL INSTITUTION MUST ADHERE
> TO ALL FEDERAL LAWS AND REGULATIONS, i.e., SPECIFIC-
> ALLY, 18 U.S.C. § 3621(e), 28 CFR § 550.58, AND
> P.S. § 5330.10;  WHICH CONFERS AN OBLIGATION UPON THE
> B.O.P. TO MAKE AVAILABLE TO PLAINTIFF ALL COMPONENTS
> OF THE RESIDENTIAL DRUG ABUSE INCENTIVE PROGRAM.


Plaintiff maintains that § 3621(b) of the Sentencing Reform Act of 1994, read in tandem with § 3621(e) of the same statute, evinces Congress' intent to provide prisoners with incentives for their participation in residential substance abuse treatment whether maintained by the Federal Government or otherwise.  See 18 U.S.C. §§ 3621(b) and (e) (emphasis added); See also  Motion Picture Ass'n of Am., Inc. v. F.C.C., 309 F.3d 796, 801 (D.C. Cir. 2002)("Statutory provisions in pari materia normally are construed together to discern their meaning.").

-28-

Thus, the Bureau has a statutory and contractual duty to offer Plaintiff incentives for his successful completion of the unit-based program component of the residential drug abuse program under P.S. § 5330.10, Chapter 5, section 5.2.1 (1996), because the B.O.P.'s interpretation that the Rivers Correctional Institution's residential drug program does not meet the criteria required by statute is invalid. See Supra, at pages 12 - 23; See also Supra, at 5 - 7.

Moreover, Plaintiff avers that his position is supported by the plain language of the Bureau's own regulations and policy.    In B.O.P. program statement § 5330.10, the policy states that:

> "All residential treatment programs **must** offer an incentive program to enhance inmate participation in treatment...."

See P.S. § 5330.10, Chapter 5, section 5.3.5(1996)(interpreting 28 CFR § 550.58) (emphasis added).

The language of the statute is in the imperative ("must"), rather than the conditional ("may") in Chapter 5, section 5.3.5 of P.S. § 5330.10, the Bureau included the word "must," which Plaintiff asserts is a mandatory command. id.[emphasis added].  "The word 'must' explicitly relates to the requirement that [all residential treatment programs must offer an incentive program], 'must' does not allow for any choice.  It means compulsion, obligation, requirement....'" Mallory v. Harkness, 895 F. Supp. 1556, 1564 (S.D. Fla. 1995)(quoting Webster's New World Dictionary, Pg. 969(College Edition,1964));  Bell v. Atlantic-

-29-

New Jersey, Inc. v. Tate, 962 F. Supp. 608, 616 n.6 (1997)(same).

The Bureau's erroneous interpretation that the term residential substance abuse treatment exclusively means a Bureau treatment facility having been removed thus makes the Bureau's position in the instant case a direct violation of its own policy. See United States v. Heffner, 420 F.2d 809, 811 (4th Cir. 1969)("An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, it's action cannot stand and courts will strike it down."); Ameria Corp. v. Veneman, 347 F. Supp.2d 225, 226 (M.D.N.C. 2004) (same).

In addition, the Bureau's position violates the intent of Congress that the sentence of a prisoner "convicted of a non-violent offense," who completes a treatment program [i.e., the unit-based component], "may be reduced...."  18 U.S.C. § 3621(e)(2)(B). See Neb. Dept., Heal & Human v. DEP., Heal. & Human, 435 F.3d 326, 330 (D.C. Cir. 2006)("When a final agency action is challenged in the district court, that court 'sits as an appellant tribunal .... [If it] determines that [the] agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standrds.'")(citing PPG Indus., Inc. v. United States, 52 F.3d 363, 365 (D.C. Cir. 1995)(internal quotation marks omitted).

## CONCLUSION

The District Court as a matter of statutory construc-
tion should find that the B.O.P.'s interpretation of the term
"residential substance abuse treatment" conflicts with the
plain language of the definition section and statutory scheme
of 18 U.S.C. §§ 3621(b), 3621(e)(1), and 3621(e)(5)(A) holistic-
ally.    In addition, the Court should find that the GEO/Rivers
Correctional Institutional Institution's residential substance
abuse treatment program meets the criteria required by policy
and statute; and thus entitles Plaintiff to be classified as
having successfully completing the first program component of
the bureau of Prisons (RDAP) in accordance with P.S. § 5330.10.

Moreover, under the light of Congress' will that all
non-violent federal prisoners who successfully completes a
residential substance abuse treatment program(500 hour) to have
access to transitional programming in conjunction with access to
all the incentive programs set forth in 18 U.S.C. § 3621; the
Court should find that the Bureau's position in the instant
matter is an invalid exercise of that authority granted by Cong-
ress. See   Colo. River Indian Tribes v. Nat. Indian Gaming, 466
F.3d 134, 139 (D.C. Cir. 2006)("An agency's general rulemaking
authority does not mean that the specific rule the agency promu-
lgates is a valid exercise of that authority.")(citations omitted);
Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 92 (2002)

("Our previous decisions... do not authorize agencies to con-
travene Congress' will in this matter.").

> "This legal conclusion does not mean that Plaintiff
> is entitled to a one-year reduction in his sentence.
> Section 3621(e)(2)(B) makes clear that the one-year
> reduction is discretionary with the BOP. ... Plaintiff,
> however, is entitled to be **considered** for such a one-
> year reduction since he has successfully completed the
> substance abuse treatment program."

See  Miller v. United States, 964 F. Supp. 15, 20 (D.D.C. 1997)
(citations omitted) (emphasis added).


## RELIEF SOUGHT


Plaintiff is seeking the following relief:


1). For the Court to construe Plaintiff's complaint liberally
in accordance with the Supreme Court case Haines v. Kerner, 404
U.S. 519, 520-21 (1972); and,

2). An order from the Court declaring the B.O.P.'s rule (Chap-
ter 6, section 6.1.1(4) of P.S. § 5330.10) that the successful
completion of a residential substance abuse treatment program
for the purposes of 18 U.S.C. § 3621(e)(2)(B), means only
Bureau treatment facilities INVALID because it conflicts with
Congress' intent under 18 U.S.C. § 3621(b) and 18 U.S.C. §
3621(e)(1); and,

3). An order from the Court compelling the B.O.P. to prepare
all the proper treatment program documentation (contained in P.S.


-32-

§ 5330.10, Chapter 9), classifying Plaintiff with provisional
early release eligibility under 18 U.S.C. § 3621(e)(2)(B),
for his successful completion of the unit-based component of
the residential substance abuse treatment program; and,

4).  An order from the Court compelling the B.O.P. to make
available to Plaintiff the remaining two components of the
Bureau's residential drug abuse treatment program under P.S.
§ 5330.10. in accordance with the Bureau's statutory duty
outlined under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3621(e)(1);
and,

5).  An order from the Court compelling the B.O.P. to make
available all of the residential drug abuse treatment Incent-
ive Programs set forth in P.S. §.5330.10, in accordance with
18 U.S.C. § 3621; and,

6).  An order from the Court compelling the B.O.P. to exercise
its discretion whether to consider Plaintiff for early release
consideration under 18 U.S.C. § 3621(e)(2)(B); and,

7).  An order from the Court compelling the B.O.P. to reimburse
Plaintiff for the entire Court filing fee, and for any and all
cost that Plaintiff may incur during the course of this action;
and,

8). For the Court to take any further action that the Court deems appropriate and just.

WHEREFORE, Plaintiff prays that the Court will grant him the relief that he is respectfully seeking, in an expeditious manner.

Respectfully Submitted,

DATED: January 11th, 2007

LACY DAVIS, III, #17348-016
Plaintiff, Pro se.

-34-

## CERTIFICATION OF COMPLAINT

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief under Title 28 U.S.C. § 1746(West. Revised Ed. 2005).

Executed on __1__ / __11__ /2007

LACY DAVIS, III#17348-016

CERTIFICATE OF SERVICE

 

 

This is to certify pursuant to Title 28 U.S.C. § 1746, that I have on this __11__ day of January 2007, served a copy of the foregoing upon the below-listed party by placing the same in the FCI Fairton Satellite Camp institution prison mail box, addressed as follows:

 

Federal Bureau of Prisons          Harley G. Lappin, Director
320 First Street, N.W.             Federal Bureau of Prisons
Washington, D.C. 20534             320 First Street
                                    Washington, D.C. 20534

 

 

Lacy Davis, III, #17348-016
Plaintiff, Pro se.

 

# Attachment



# CONTRACT AWARD

| | PAGE | OF | PAGES |
|---|---|---|---|
| | 1 | | 181 |

| 1. CONTRACT NUMBER | 2. EFFECTIVE DATE | 3. SOLICITATION NUMBER | 4. REQUISITION/PROJECT NUMBER |
|---|---|---|---|
| J1PCc-005 | See Block 15c | RFP PCC-0004 | N/A |

| 5. ISSUED BY | CODE | N/A | 6. ADMINISTERED BY *(If other than Item 5)* | CODE | N/A |
|---|---|---|---|---|---|

**5. ISSUED BY**

Federal Bureau of Prisons
320 First Street NW Room 500-6
Washington, DC 20534
Scott P. Stermer, Contracting Officer
(OMB #1103-0018 EXP 02/28/01)

**6. ADMINISTERED BY**

Same Block 5

# ORIGINAL

**7. NAME AND ADDRESS OF CONTRACTOR** CODE

Wackenhut Corrections Corporation
4200 Wackenhut Drive
Palm Beach Gardens, FL 33410

**8. PAYMENT WILL BE MADE BY**

Federal Bureau of Prisons
Mid-Atlantic Region
Junction Business Park
10010 Junction Drive, Suite 100-N
Annapolis Junction, MD 20701
Regional Comptroller

| 9A. DUNS NUMBER | 9B. TAXPAYER'S IDENTIFICATION NO. | 10. SUBMIT INVOICES *(4 copies unless otherwise specified)* TO |
|---|---|---|
| (b)(4) | (b)(4) | [X] ITEM 5  [ ] ITEM 6  [ ] ITEM 8  [ ] OTHER *(Specify)* |

## 11. TABLE OF CONTENTS

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | **PART I - THE SCHEDULE** | | | | **PART II - CONTRACT CLAUSES** | |
| X | A | SOLICITATION/CONTRACT FORM | 3 | X | I | CONTRACT CLAUSES | 11 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 4 | | | **PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH.** | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 40 | X | J | LIST OF ATTACHMENTS | 96 |
| X | D | PACKAGING AND MARKING | 1 | | | **PART IV - REPRESENTATIONS AND INSTRUCTIONS** | |
| X | E | INSPECTION AND ACCEPTANCE | 4 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | 14 |
| X | F | DELIVERIES OR PERFORMANCE | 2 | X | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 3 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 3 | | M | EVALUATION FACTORS FOR AWARD | |

**12. BRIEF DESCRIPTION**

Contractor-Owned and Contractor-Operated correctional facility for an estimated population of 1,200 low security male District of Columbia (D.C.) sentenced felons.

| 13. TOTAL AMOUNT OF CONTRACT | ▶ | $91,890,622.95  (FP01009T120M) |
|---|---|---|

**14. CONTRACTOR'S AGREEMENT.** Contractor agrees to furnish and deliver the items or perform services to the extent stated in this document for the consideration stated. The rights and obligations of the parties to this contract shall be subject to and governed by this document and any documents attached or incorporated by reference.

**15. AWARD.** The Government hereby accepts your offer on the solicitation identified in item 3 above as reflected in this award document. The rights and obligations of the parties to this contract shall be subject to and governed by this document and any documents attached or incorporated by reference.

[X] A. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN FOUR COPIES TO THE ISSUING OFFICE. *(Check if applicable)*

**B. SIGNATURE OF PERSON AUTHORIZED TO SIGN**

*[signature]*

**C. NAME OF SIGNER**

Wayne H. Calabrese

**D. TITLE OF SIGNER**

President

**E. DATE**

2/22/2000

07 0201

**A. UNITED STATES OF AMERICA** *(Signature of Contracting Officer)*

*[signature]*

**FILED**

JAN 30 2007

**B. NAME OF CONTRACTING OFFICER**

Scott P. Stermer, Contracting Officer

**C. DATE**

3/7/2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

AUTHORIZED FOR LOCAL REPRODUCTION

**OPTIONAL FORM 307** (9-97)
Prescribed by GSA - FAR (48 CFR) 53.215-1(e)

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  EXPLANATION OF STATEMENT OF WORK TERMS . . . . . . . . . . 2

III. OBJECTIVE . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.  Performance Requirements . . . . . . . . . . . . . . . 5
     B.  Contract Compliance . . . . . . . . . . . . . . . . . 6
     C.  General Administration . . . . . . . . . . . . . . . . 7
     D.  Fiscal Management . . . . . . . . . . . . . . . . . . 9
     E.  Personnel . . . . . . . . . . . . . . . . . . . . . . 10
     F.  Training and Staff Development . . . . . . . . . . . . 17
     G.  Case Records . . . . . . . . . . . . . . . . . . . . . 19
     H.  Information Systems and Research . . . . . . . . . . . 19
     I.  Physical Plant . . . . . . . . . . . . . . . . . . . . 22
     J.  Security and Control . . . . . . . . . . . . . . . . . 25
     K.  Safety and Emergency Procedures . . . . . . . . . . . 29
     L.  Discipline . . . . . . . . . . . . . . . . . . . . . . 30
     M.  Inmate Rights . . . . . . . . . . . . . . . . . . . . 30
     N.  Reception and Orientation . . . . . . . . . . . . . . 31
     O.  Classification . . . . . . . . . . . . . . . . . . . . 32
     P.  Health/Mental Health Care . . . . . . . . . . . . . . 32
     Q.  Social Services . . . . . . . . . . . . . . . . . . . 36
     R.  Work and Correctional Industries . . . . . . . . . . . 36
     S.  Academic and Vocational Education . . . . . . . . . . 37
     T.  Recreation and Activities . . . . . . . . . . . . . . 38
     U.  Telephone . . . . . . . . . . . . . . . . . . . . . . 38

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    I.    INTRODUCTION

2    The National Capital Revitalization and Self-Government
3    Improvement Act of 1997 mandates that the Bureau of Prisons house
4    a portion of the District of Columbia sentenced felon population
5    in private contract facilities.

6    The Bureau of Prisons has proceeded to comply with this mandate
7    by identifying the appropriate populations to fulfill the
8    requirement from the overall District of Columbia sentenced felon
9    population.

10   The attached SOW identifies the technical and programmatic
11   details for a low security adult male population.

1

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    II.   EXPLANATION OF STATEMENT OF WORK TERMS

2    ACA - American Correctional Association.  The private, nonprofit
3    organization that administers the only national accreditation
4    program for all components of adult and juvenile corrections.
5    Its purpose is to promote improvement in the management of
6    correctional agencies through the administration of a voluntary
7    accreditation program and the ongoing development and revision of
8    relevant, useful standards.

9    BOP - Federal Bureau of Prisons.

10   BOPDOCS - The electronic document management system for the BOP
11   containing policy, regulations and directives.

12   CO - Contracting Officer.  The Government employee, by virtue of
13   a Contracting Officer's Warrant, empowered to negotiate, award,
14   administer, cancel or terminate contracts on behalf of the United
15   States Government.

16   Contract Award - The date the CO awards the contract.  For the
17   purposes of the contract, the date the CO signs the Standard Form
18   (SF) 33, Solicitation, Offer and Award or the SF 26, Contract
19   Award.

20   COR - Contracting Officer's Representative.  The Government
21   employee designated in writing by the CO authorized to perform
22   certain limited functions on behalf of the CO.  The extent of COR
23   responsibilities are outlined in Section G of the contract and
24   the COR Designation Letter, a copy of which will be provided to
25   the contractor subsequent to contract award.

26   COTR - Contracting Officer's Technical Representative.
27   Government staff designated in writing by the CO who assist the
28   COR in the performance of duties.  The extent of COTR
29   responsibilities are delineated in writing by the CO and will be
30   provided to the contractor subsequent to award.

31   Credentials - Documents providing primary source verification
32   including education, training, licensure, experience, board
33   certification and qualifications of an employee.

34   DC - District of Columbia.

35   DCDOC - District of Columbia Department of Corrections.

2

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  DOJ - Department of Justice.

2  DHO - Discipline Hearing Officer.  The Government-trained
3  contractor employee responsible for conducting discipline
4  hearings.

5  Emergency - Any significant disruption of normal institution
6  procedure, policy or activity including but not limited to:
7  inmate disturbances; work or food strike; food borne illness;
8  escape; fire; natural disaster; or other serious incident.

9  FBI - Federal Bureau of Investigation.

10  Former Inmate - A person who has been found guilty of committing
11  a felony or misdemeanor for whom less then one year has elapsed
12  since release from custody or any type of supervision.

13  HSU - Health Services Unit.  The organizational unit providing
14  routine and emergency health care.  The HSU is the designated
15  part of the institution delivering care to inmates on an
16  ambulatory or observation basis.

17  Inmate - An individual confined under the auspices and authority
18  of the BOP or under supervision of a Federal court.

19  Inmate Records - Information concerning an inmate's personal,
20  criminal and medical history, behavior and activities while in
21  custody.  This may include, but is not limited to: detainers;
22  personal property receipts; visitor lists; photographs;
23  fingerprints; disciplinary infractions and actions taken;
24  grievance reports; work assignments; program participation;
25  miscellaneous correspondence; forms prescribed by Government
26  policy, etc.

27  JCAHO - Joint Commission on Accreditation of Health Care
28  Organizations.

29  Lethal Force - The force a person uses with the purpose of
30  causing/or which they know, or should know, would create a
31  substantial risk of causing death or serious bodily harm.

32  NTP - Notice to Proceed.  The written official notice signed by
33  the CO which authorizes the contractor to proceed with the
34  contract.  The contractor shall begin accepting inmates within 30
35  days after issuance of the NTP.

3

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  OAR - Operational Availability Rate.  The monthly rate for
2  computer services/resource components which is a percentage
3  calculated by dividing the accumulated monthly down time hours by
4  the total number of hours of operation for a given month.

5  Prime Contractor - The entity to which the Government has awarded
6  the contract.

7  Professional Staff - Staff employed in the Medical, Educational,
8  Religious and Psychological disciplines.

9  P.S. - Program Statement.  A BOP written directive that
10 establishes policy in a given area.

11 Safety Equipment - Including but not limited to fire fighting
12 equipment (e.g., chemical extinguishers, hoses, nozzles, water
13 supplies, alarm systems, portable breathing devices, gas masks,
14 fans, first aid kits, stretchers) and alarm systems.

15 Sensitive Information - Any information which could affect the
16 national interest, law enforcement activities, the conduct of
17 Federal programs or the privacy to which individuals are entitled
18 under Section 552a of Title 5, U.S.C.

19 SENTRY - The BOP's on-line, real time data base system, used
20 primarily for maintaining information about Federal inmates.  It
21 contains information about sentencing, work assignments,
22 admission/release status and other special assignments for
23 monitoring inmate status.  The SENTRY system also includes
24 property management and other modules which address most aspects
25 of incarceration.

26 Subcontract - Any agreement entered into by the prime contractor
27 with another entity to provide services and supplies to
28 accomplish performance of the contract.

29 USMS - United States Marshals Service.

30 Warden - The contractor's official, regardless of title (e.g.,
31 Chief Executive Officer (CEO) or Facility Administrator) who has
32 ultimate responsibility for the overall management and operation
33 of the institution.

34 Additional definitions are contained in the ACA Standards for
35 Adult Correctional Institutions.

4

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    III. OBJECTIVE

2    A.  Performance Requirements

3    This SOW sets forth the contract performance requirements for the
4    comprehensive management and operation of a contractor-owned/
5    contractor-operated corrections facility for a low security adult
6    male population.

7    Housing facilities shall be provided to accommodate at least
8    1,200 low security beds at a single site.  In addition, the
9    institution shall include a special housing unit (segregation)
10   with a capacity of at least 10% of the institution's rated
11   capacity.

12   The contractor shall ensure that the institution is operated in a
13   manner consistent with the mission of the BOP.  It is the mission
14   of the BOP to protect society by confining offenders in the
15   controlled environments of prison and community-based facilities
16   that are safe, humane, cost-efficient, and appropriately secure,
17   and that provide work and other self-improvement opportunities to
18   assist offenders in becoming law-abiding citizens.

19   The institution shall be located within a 300 mile radius of the
20   United States Capitol, Washington, D.C.

21   Contract performance shall be for a three-year base period with 7
22   one-year options, exercised unilaterally by the Government, for a
23   potential term of ten years.

24   Within 365 days following contract award, the contractor shall
25   notify the CO it is ready to accept inmates and assume full
26   responsibility for the operation, maintenance and security of the
27   institution.

28   It is essential that the contractor be fully prepared to accept
29   responsibility for performing the requirements of the contract,
30   thus ensuring the safety and security of the community.
31   Therefore, the BOP will perform numerous assessments to ensure
32   contract compliance prior to issuance of the NTP (See Contract
33   F.2).

34   Unless otherwise specified, all plans, policies and procedures,
35   including those identified in the ACA standards, shall be
36   developed by the contractor and submitted in writing to the CO

5

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  for review and concurrence prior to issuance of the NTP.  Once
2  concurrence has been granted, these plans, policies and
3  procedures shall not be modified without the prior written
4  acknowledgment of the CO.

5  If the BOP determines the contractor is capable of accepting
6  inmates, the NTP will be issued.  The contractor shall begin
7  accepting inmates within 30 days after issuance of the NTP.

8  It is anticipated that the BOP will predominantly designate
9  individuals committed as DC sentenced felons to the institution.
10 However, the BOP may designate any inmate within its custody
11 utilizing the same designation criteria as used at other BOP
12 facilities.  P.S. 5100.06, Security Designation and Custody
13 Classification Manual, outlines the procedures for designating
14 inmates.

15 Designations to the institution are anticipated to occur at an
16 estimated rate of 40 inmates per week.  The estimated weekly
17 designation of 40 inmates to the institution will result in the
18 population meeting the 1,200 bed requirement in 30 weeks.  The
19 institution designation schedule of 40 inmates per week is an
20 estimate only.  Actual designations will depend upon many
21 factors, including but not limited to, the contractor's ability
22 to provide services in accordance with the SOW; the sentencing of
23 offenders by the DC and Federal Courts; the designation of
24 offenders by the BOP.

25 Unless otherwise indicated, the contractor shall furnish all
26 personnel, management, equipment, supplies and services necessary
27 for performance of all aspects of the contract.

28 Unless explicitly stated otherwise, the contractor is responsible
29 for all costs associated with and incurred as part of providing
30 the services outlined in this contract.

31 B.  Contract Compliance

32 All services and programs shall comply with the SOW; the U.S.
33 Constitution; all applicable Federal, state and local laws and
34 regulations; applicable Presidential Executive Orders (E.O.); all
35 applicable case law, consent decrees, and Court Orders.  Should a
36 conflict exist between any of the aforementioned standards, the
37 most stringent shall apply.  When a conflict exists and a
38 conclusion cannot be made as to which standard is more stringent,

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  the CO shall determine the appropriate standard.  The contractor
2  shall comply with and implement any applicable changes to BOP
3  policy, DOJ regulations, Congressional mandate, Federal law, DC
4  law, or E.O.  Should the Government invoke such changes the
5  contractor retains its rights and remedies under the terms and
6  conditions of the contract.

7  The BOP reserves its rights to conduct announced and unannounced
8  inspections of any aspect of contract performance at any time and
9  by any method in order to assess contract compliance.

10  C.  General Administration

11  Unless otherwise specified by the CO, the contractor is required
12  to perform in accordance with the most current edition of the ACA
13  Standards for Adult Correctional Institutions and Standards
14  Supplement.

15  The contractor shall obtain ACA accreditation within 24 months of
16  NTP and shall maintain continual compliance with the above
17  referenced ACA standards and supplements during performance of
18  the contract, unless otherwise specified by the BOP.  Once full
19  accreditation has been obtained, the contractor shall maintain
20  this accreditation throughout the life of the contract, inclusive
21  of any option year exercised.  Failure to perform in accordance
22  with contract requirements and to obtain ACA accreditation within
23  24 months of NTP will, at a minimum, result in a reduction of the
24  contract price.

25  Accomplishment of some ACA standards is augmented by BOP policy
26  and/or procedure.  In these instances, the SOW identifies and
27  provides direction for the enhanced requirements.

28  The contractor is responsible for a Quality Control Program (QCP)
29  which ensures all requirements of this SOW are achieved.  The
30  specific requirements for the QCP are detailed in Section J,
31  Attachments 2, 3, and 4 of the contract.

32  Several sections of this SOW require the contractor to maintain a
33  system of records identical to the BOP's.  The contractor shall
34  not establish a separate system of records without prior written
35  concurrence by the CO.  This requirement is necessary to maintain
36  consistency of inmate records as inmates transfer throughout the
37  BOP.

7

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    All records related to contract performance shall be retained in
2    a retrievable format for the duration of the contract.  Except as
3    otherwise expressly provided in this SOW, the contractor shall,
4    upon request of the CO or upon completion or termination of the
5    resulting contract, transmit to the Government any records
6    related to the performance of the contract.

7    The contractor shall protect, defend, indemnify, save and hold
8    harmless the United States Government, the BOP and its employees
9    or agents, from and against any and all claims, demands,
10   expenses, causes of action, judgments and liability arising out
11   of, or in connection with, any negligent or intentional acts or
12   omissions of the contractor, its agents, subcontractors,
13   employees, assignees or any one for whom the contractor may be
14   responsible.  The contractor shall also be liable for any and all
15   costs, expenses and attorneys fees incurred as a result of any
16   such claim, demand, cause of action, judgment or liability,
17   including those costs, expenses and attorneys fees incurred by
18   the United States Government, the BOP and its employees or
19   agents.  The contractor's liability shall not be limited by any
20   clause or limits of insurance set forth in the resulting
21   contract.

22   In awarding the contract, the Government does not assume any
23   liability to third parties, nor will the Government reimburse the
24   contractor for its liabilities to third parties, with respect to
25   loss due to death, bodily injury, or damage to property resulting
26   in any way from the performance of the contract or any
27   subcontract under this contract.

28   The contractor shall be responsible for all litigation, including
29   the cost of litigation, brought against it, its employees or
30   agents for alleged acts or omissions.

31   The CO shall be notified in writing by the contractor of all
32   litigation pertaining to this contract and provided copies of
33   said litigation within five working days of the filing.  The
34   contractor shall cooperate with Government legal staff and/or the
35   United States Attorney regarding any requests pertaining to
36   Federal or contractor litigation.

37   Policies and procedures shall be developed which ensure a
38   positive relationship is maintained with all levels of Federal,
39   state, and local governments.  Procedures shall include a

8

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    tracking system which ensures all Congressional/Judicial
2    inquiries and program recommendations are responded to in a
3    timely and accurate manner. All Judicial/Congressional
4    inquiries and contractor responses, specifically related to an
5    inmate, shall be made part of the inmate's central file.

6    The CO shall be notified when a request is made for inmate or
7    employee interviews or facility visits by any representative of
8    the media as defined by P.S. 1480.03, <u>Contact with News Media</u>.
9    The contractor shall coordinate all public information related
10   issues with the CO and clear, in advance, all press statements
11   and releases.

12   The contractor shall ensure its employees agree to use
13   appropriate disclaimers clearly stating the employees' opinions
14   do not necessarily reflect the position of the BOP or DOJ in any
15   public presentations they make or articles they write that relate
16   to any aspect of contract performance or prison operations.

17   D.   Fiscal Management

18   The commissary shall be operated by the contractor as a privilege
19   to inmates. Any revenues earned in excess of those needed for
20   commissary operations shall be used solely to benefit inmates in
21   accordance with P.S. 4500.04, <u>Trust Fund/Warehouse/Laundry</u>
22   <u>Manual,</u> Chapter 4504. The commissary shall make available gender
23   specific items for purchase that are not required to be furnished
24   by the contractor. Inmates shall have the opportunity to
25   purchase from the commissary at least once a week. The
26   contractor shall ensure that inmates spend no more on purchases
27   than the BOP spending limit excluding those items listed in P.S.
28   4500.04, <u>Trust Fund/Warehouse/Laundry Manual</u>, Chapter 4526. The
29   contractor shall maintain an inventory of items stocked in the
30   commissary and ensure that no prohibited items in accordance with
31   P.S. 4500.04, <u>Trust Fund/Warehouse/Laundry Manual</u>, Chapter 4522
32   are stocked. The commissary inventory shall be provided to the
33   CO upon request. The sales price for commissary items shall be
34   computed in accordance with P.S. 4500.04, <u>Trust Fund/Warehouse/</u>
35   <u>Laundry Manual</u>, Chapter 4523.

36   Inmates are permitted to receive funds from outside sources
37   (e.g., from family, friends, bank accounts). Either outside
38   funds or those generated from work may be used to pay for
39   products and services from the commissary.

9

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    Procedures shall be established for transfer of inmate funds upon
2    release from the institution, transfer to another institution or
3    when an inmate requests a funds transfer to an outside source.
4    Transfer of inmate funds shall occur within five working days
5    upon release from the institution, transfer to another
6    institution or when an inmate requests a funds transfer to an
7    outside source.  The contractor shall be responsible for
8    maintenance of inmate accounts including, but not limited to,
9    posting inmate pay, Financial Responsibility Program (in
10   accordance with P.S. 2011.06, <u>Financial Responsibility Program,</u>
11   <u>Inmate, Processing Payments</u>, and P.S. 5380.05, <u>Financial</u>
12   <u>Responsibility Program, Inmate</u>) Cost of Incarceration Fee (in
13   accordance with P.S. 2011.07, <u>Cost of Incarceration Fee,</u>
14   <u>Accounting For</u>, and P.S. 5380.03, <u>Cost of Incarceration Fee</u>).

15   E.   Personnel

16   It is essential that all contractor personnel meet the highest
17   standards of professionalism and personal integrity.

18   The contractor shall make a *bona fide* offer of employment, on a
19   right of first refusal basis, to qualified DCDOC employees who
20   apply as a result of being impacted by an agency-wide reduction-
21   in-force (RIF) as a result of The National Capital Revitalization
22   and Self-Government Improvement Act of 1997.  The only conditions
23   for employment are that applicants meet the minimum requirements
24   identified within the contract.  All such employees hired by the
25   contractor shall be offered positions at salaries and benefits
26   comparable to their latest DCDOC position.

27   The contractor shall develop written standards of conduct, to
28   include those standards outlined in Section J, Attachment 6.
29   These standards shall be maintained as a part of the contractor's
30   Personnel Policy Manual.  The contractor, its employees and
31   volunteers are expected to adhere to standards of employee
32   conduct and integrity while both on and off duty.  The contractor
33   shall follow procedures in Section J, Attachment 6 in the
34   reporting and investigation of standards of conduct violation(s).

35   Prior to employees entering on duty (EOD) at the institution, the
36   contractor shall ensure the following steps are completed for
37   each applicant as noted below:

38        1.   A pre-employment interview.

10

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

    2.  Law enforcement agency checks covering the past five years.

    3.  Employment vouchering for the last five years.

    4.  Employment Eligibility Verification (DOJ-INS Form I-9).

    5.  Credit check. (For employment purposes as described in the Fair Credit Reporting Act).

    6.  FBI Name and Fingerprint forms completed.

    7.  National Crime Information Center (NCIC) check.

    8.  National Law Enforcement Telecommunications (NLETS) check.

    9.  Conditional Offer of Employment.

   10.  Urinalysis.

   11.  Questionnaire for Public Trust Positions (SF-85P or approved equivalent) - all applicants receiving conditional offer.

   12.  Supplemental Questionnaire for Selected Positions (OPM Form 85P-S or approved equivalent).

   13.  Notify CO of scheduled EOD and Limited Background Investigation (LBI) initiation.

Contractor responsibilities subsequent to EOD:

   14.  Notification to CO of actual EOD within 24 hours.

   15.  Receipt and review of LBI report.

   16.  Notification to CO of decision regarding employment.

The contractor shall utilize the Pre-employment Interview Questionnaire and Guidelines of Acceptability (Guidelines) for job applicants as noted in Step 1 above (Guidelines will be made available to the contractor after contract award). There may be occasions where a job applicant's past behavior is unacceptable as defined by the Guidelines, but the contractor still desires to select the applicant. In this case, the contractor shall request the Guidelines be waived. This waiver request shall be submitted to the CO in writing and include: 1) the details and circumstances surrounding the applicant's behavior which is outside the Guidelines; 2) the reason(s) why the applicant should receive further consideration; and, 3) the availability of other suitable applicants.

The contractor shall fingerprint all applicants using BOP supplied forms. Completed fingerprint forms and the SF 85P and SF 85P-S (or equivalents) with original signatures and dates

11

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  shall be submitted to the CO for each applicant offered
2  conditional employment.  The BOP will initiate the National
3  Agency Check which includes the FBI name and fingerprint check.
4  The BOP will ordinarily advise the Warden or designee of the
5  results of name and fingerprint checks within 90 working days of
6  submission to the FBI.

7  The contractor shall complete Steps 1 - 6 on each prospective
8  employee prior to submitting information required by Steps 7 and
9  8 to the CO for completion.

10  The Warden or designee shall be the contractor's liaison for the
11  processing of data required for the BOP to conduct NCIC/NLETS,
12  name and fingerprint checks.  The information listed below shall
13  be provided for each on-site applicant, to include subcontractor
14  personnel and volunteers:  full name (with aliases, maiden name
15  if applicable, or other names used); date of birth; gender; place
16  of birth; social security number and race.  Included with this
17  information, the Warden or designee shall certify Steps 1 - 6
18  above have been accomplished with satisfactory results for each
19  applicant.

20  The BOP may require additional information to process NCIC/NLETS
21  and name checks, therefore, the contractor's employment
22  application document shall contain information regarding
23  applicant height; weight; eye and hair color; markings, scars and
24  tattoos; citizenship; driver's license number and State of issue;
25  and current address.

26  The contractor shall keep the BOP apprised of the volume of
27  applicants.  The BOP will ordinarily advise the Warden or
28  designee of the results of applicant NCIC/NLETS checks within
29  seven working days following receipt of accurate and complete
30  NCIC/NLETS data from the contractor.

31  Based upon the Warden's certification and the results of the
32  NCIC/NLETS, the BOP will grant conditional approval for the
33  applicant to work under the terms of this contract.  Upon receipt
34  of this approval, the contractor may grant the applicant a
35  conditional offer of employment.  The contractor shall provide
36  the CO with advance written notification of all employees'
37  scheduled EOD.  Written notification of all on-site employees
38  actual EOD shall be provided to the CO within 24 hours of an
39  employee reporting to work.

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  All applicants who are offered conditional employment by the
2  contractor shall be subject to urinalysis testing in accordance
3  with P.S. 3735.02, <u>Drug free Workplace</u>, Section 13.  If the test
4  result is positive, the applicant shall be prohibited from
5  working with Federal inmates.  All applicants who have been
6  offered conditional employment by the contractor shall complete
7  the SF 85P or approved equivalent.  Additionally, those employees
8  who will be authorized to carry weapons in the course of their
9  employment under this contract shall complete the SF 85P-S or
10 approved equivalent.  The contractor shall ensure that all
11 employees who will be issued or authorized to carry firearms meet
12 all requisite requirements for possessing a firearm.
13 Accordingly, pursuant to 18 U.S.C. 922(g)(9), employees who have
14 been convicted of a misdemeanor crime of domestic violence are
15 not authorized to carry or use a firearm under performance of
16 this contract.  The information contained on the contractor
17 developed form will become part of the background investigation
18 for these selected positions.

19 The contractor shall ensure a LBI check, as prescribed in the
20 Scope and Coverage of a Limited Background Investigation (Section
21 J, Attachment 7) is requested and all appropriate information
22 received, by the contractor-designated entity responsible for
23 completing the LBI, prior to an employee's EOD.

24 Within one year of each on-site employee's EOD, the contractor
25 shall receive, review, identify and resolve derogatory
26 information contained on the LBI results using the Adjudication
27 Standards for Resolving Limited Background Investigations and
28 Periodic Reinvestigations, outlined in Section J, Attachment 8 of
29 the contract.  The contractor shall make a determination
30 regarding the employee's suitability for employment under this
31 contract. Investigations with little or no derogatory information
32 will be reviewed and forwarded to the CO within 90 days of the
33 investigation completion date.  Investigations requiring
34 resolution of derogatory information will be forwarded within 180
35 days of the investigation completion date.  Extended adjudication
36 time frames may be requested from the CO on a case-by-case basis.

37 In the event the LBI identifies derogatory information, the
38 contractor's determination regarding the retention of an employee
39 shall be in writing and forwarded by the Warden to the CO with
40 copies of the information obtained in Steps 1 - 5, 12 and 15.
41 There may be occasions where derogatory information contained in
42 the employee's LBI is unacceptable as defined by the

13

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    Acceptability Standards, but the contractor still desires to
2    retain the employee.  In such cases, the contractor shall submit
3    a written request for waiver of the Acceptability Standards to
4    the CO which includes the details and circumstances surrounding
5    the employee's behavior and the reason(s) why the employee should
6    be retained.

7    The BOP will be the final approval authority for all contractor
8    staff who work with Federal inmates under the terms of this
9    contract.  No individual who is under supervision or jurisdiction
10   of any parole, probation or correctional authority shall be
11   employed under this contract.  Persons with previous misdemeanor
12   criminal convictions or a felony conviction, who are not under
13   supervision, may be considered for employment; however, the BOP
14   shall be the approval authority in all such cases.  The BOP may
15   give consideration to such factors as criminal history, time
16   elapsed since conviction(s) and subsequent adjustment in the
17   community.

18   The contractor shall ensure all employees are reinvestigated
19   periodically, as prescribed in the Scope and Coverage of a
20   Periodic Reinvestigation in Section J, Attachment 8 of the
21   contract.  Employees will be required to complete required
22   investigative forms and fingerprint cards for submission to the
23   BOP.  The BOP will initiate the National Agency Check, which
24   includes the name and fingerprint checks.  Upon receipt, review,
25   and resolution of any derogatory information contained in the
26   reinvestigation report, the Warden shall forward to the CO a
27   written determination regarding the employee's continued
28   employment under this contract.  A copy of the reinvestigation
29   report shall be attached to the Warden's written request.

30   Should the institution staff turnover rate exceed an acceptable
31   level, as determined by the CO, or repetitive NCIC/NLETS or
32   fingerprint checks are necessary due to contractor error, the
33   actual cost of processing the NCIC/NLETS, name and fingerprint
34   checks shall be withheld from amounts due the contractor.

35   The contractor shall ensure all employment practices are in
36   compliance with U.S. Department of Labor requirements in addition
37   to applicable state and local requirements.

38   In the absence of a collective bargaining agreement, the
39   contractor shall enter into a written employment agreement with

14

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    each employee assigned to work within the institution.  This
2    agreement shall provide that, in recognition of the public safety
3    requirements for uninterrupted services in the institution and in
4    return for adequate consideration, including an employee
5    grievance procedure, the employee agrees not to strike or
6    otherwise interrupt normal operations at the institution without
7    giving 10 days advance written notice.

8    The contractor shall ensure that a contingency plan covering work
9    actions or strikes is included as a part of its Personnel Policy
10   Manual.

11   In the event the contractor negotiates collective bargaining
12   agreements applicable to the work force under the contract, the
13   contractor shall use its best efforts to ensure such agreements
14   contain provisions designed to assure continuity of services.
15   All such agreements entered into during the contract period of
16   performance should provide that grievances and disputes involving
17   the interpretation or application of the agreement will be
18   settled without resorting to strike, lockout or other
19   interruption of normal operations.

20   For this purpose, each collective bargaining agreement should
21   provide an effective grievance procedure with arbitration as its
22   final step, unless the parties mutually agree upon some other
23   method of assuring continuity of operations.  As part of such
24   agreements, management and labor should agree to cooperate fully
25   with the Federal Mediation and Conciliation Service.  The
26   contractor shall include the substance of this requirement in any
27   subcontracts for protective services.

28   All personnel files shall be available to the CO upon request.
29   Personnel files (e.g., background checks, verification of
30   training, experience, and professional credentials) shall be kept
31   current and maintained for the duration of the contract.

32   Personnel requirements of this contract shall apply to all
33   on-site subcontractor personnel and volunteers.

34   The following essential personnel and respective minimum
35   qualification requirements are considered critical for
36   performance of this contract.

15

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1     Project Coordinator - Knowledge and experience within the
2     last five years in planning and executing large, complex,
3     projects similar in nature to the requirements of this
4     contract.

5     Warden(s) - Knowledge of program objectives, policies,
6     procedures and requirements for managing a secure
7     correctional facility.  A minimum of 10 years experience in
8     corrections or related field with experience in the
9     management of a correctional facility at the Associate
10    Warden level or above.

11    Associate Warden(s) - Knowledge of program objectives,
12    policies, procedures and requirements for managing a
13    correctional facility.  A minimum of 10 years experience in
14    corrections or related field with experience in the field of
15    corrections at the level of mid-management.

16  Within 15 days of contract award, the contractor shall submit a
17  written request to the CO for conditional employment approval of
18  the Project Coordinator.  Within 180 days of contract award, the
19  contractor shall submit a written request to the CO for
20  conditional employment approval of the Warden(s) and Associate
21  Warden(s).

22  The essential personnel listed below are commonly referred to as
23  department heads.  Minimum qualification requirements for the
24  following essential personnel are: knowledge of program
25  objectives, policies, procedures and duties specific to the
26  position; a minimum of five years of supervisory/management
27  experience in a field directly related to the specific duties of
28  the position.
29
30    Case Management Coordinator
31    Chief Correctional Supervisor
32    Administrator, Religious Services
33    Correctional Shift Supervisors
34    Computer Services Manager
35    Facility Manager/Administrator
36    Food Service Administrator
37    Inmate Systems/Records Office Manager
38    Medical Services Administrator
39    Quality Control Specialist

16

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1       Safety/Environmental Specialist

2    The Administrator, Religious Services shall be certified by the
3    American Correctional Chaplains Association (ACCA) or meet
4    certification standards established by ACCA.

5    Daily correctional staff assignment rosters which reflect both
6    scheduled and actual assignments, by shift and for each post,
7    shall be maintained.

8    The number and type of staff described in the contractor's
9    staffing plan accepted in the resulting contract shall be
10   maintained as the minimally acceptable staff compliment
11   throughout the term of the contract.  Any and all requests to
12   reduce staffing levels or staff utilization shall be submitted in
13   writing to the CO for approval prior to implementation.

14   F.  Training and Staff Development

15   Upon the contractor's written request to the CO, the Government
16   will provide the following initial specialized training at the
17   contractor's facility, on a one-time basis, at no cost to the
18   contractor:

19   1.  Records Office Training (Records Office Staff)
20       a.  Movement Coordination Training - 8 hours
21       b.  Maintenance, Retirement and Disposal of Inmate Files -
22          8 hours

23   2.  Correctional Programs (Affected Staff)
24       a.  Case Management/Central Inmate Monitoring - 40 hours
25       b.  Disciplinary Procedures - 24 hours
26       c.  Disciplinary Hearing Officer Training - 80 hours
27          (mandatory, as described in Section J of the SOW)

28   3.  Other
29       a.  SENTRY Training - Inmate Systems; Education;
30          Correctional Services; Financial Management;
31          Correctional Programs, Health Services; Other staff -
32          (40 hours)

17

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1      b.   Human Resource Management (24 hours) - For contractor's
2              human resource management staff.  To include background
3              investigation issues.

4      c.   Self-Study Courses
5           1.   Judgment and Commitment File Training
6           2.   Detainer/Writs/Interstate Agreement on Detainers
7               Training
8           3.   SENTRY General Use Technical Reference Manual
9           4.   Receiving and Discharge Training
10         5.   Inmate Funds Management Training
11         6.   Mail Management Training
12         7.   Population Accountability Training
13         8.   New Mail Room Officer's Self Study Course and
14              Survival Skills Training
15         9.   New Receiving and Discharge Officer's Self Study
16              Course and Survival Skills Training
17       10.   Central Inmate Monitoring Certification
18              Correspondence Course

19   The contractor may request, at its expense, additional training
20   to supplement the initial BOP provided training.

21   The contractor shall develop and implement a comprehensive staff
22   training program addressing the institution's sexual
23   abuse/assault prevention and intervention program.  Written
24   policy, procedure, and practice shall provide that all staff
25   receive such training prior to entry on duty and on an annual
26   basis as part of the institution's in-service training plan.
27   Pre-service and in-service training shall be augmented with
28   specialized training for appropriate staff (e.g., case managers,
29   counselors, psychology services, chaplaincy, correctional
30   officers, investigatory officials, health/mental health care,
31   etc.)
32
33   The contractor shall provide disturbance control training to the
34   appropriate staff.  Certified disturbance control instructors
35   shall be used to conduct training in disturbance control
36   procedures.  Certification shall be from a CO-approved Federal,
37   state or county training academy or program.  The use and
38   carrying of weapons for training shall meet all Federal, state
39   and local laws and regulations.

18

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    G.   Case Records

2    All inmate files (e.g., central files, medical files and judgment
3    and commitment files) are to be prepared, maintained, retired and
4    disposed of in accordance with the BOP format.  Policy and
5    procedures shall be developed to ensure the confidentiality and
6    security of all inmate files (e.g., judgment and commitment
7    files, central files, U.S. Parole Commission mini-files) in
8    accordance with P.S. 5800.07, <u>Inmate Systems Management Manual</u>,
9    P.S. 5800.11, <u>Central File, Privacy Folder and Parole Mini-Files)</u>
10   and in accordance with all applicable Federal provisions (e.g., 5
11   U.S.C. 552 and 552a).

12   The contractor shall interact with other agencies to satisfy
13   outstanding inmate obligations including, but not limited to:  1)
14   processing of Federal and state writs; 2) administration of the
15   Interstate Agreement on detainers; 3) detainer inquiries; 4)
16   lodging and removal of detainers; and 5) coordination of
17   transfer/inmate movement in and out of the institution in
18   accordance with P.S. 5800.07, <u>Inmate Systems Management Manual</u>,
19   Chapter 8; P.S. 5130.05, <u>Detainers and the Interstate Agreement</u>
20   <u>on Detainers</u>; P.S. 5875.08, <u>Transfers of Inmates to State Agents</u>
21   <u>for Production on State Writs</u>; and, P.S. 5800.08, <u>Receiving and</u>
22   <u>Discharge Manual</u>.

23   The contractor shall:  1) maintain inmate judgment and commitment
24   files; 2) maintain file accountability and security; 3) respond
25   to inmate inquiries; 4) respond to outside requests for
26   information; 5) verify release methods and dates prior to an
27   inmate's release; and other related functions.

28   The contractor shall comply with the Privacy Act of 1974,
29   (5 U.S.C. 552a) and 28 CFR, Parts 16 and 513.

30   No inmate shall be admitted to, or released from, institution
31   custody without prior BOP approval.

32   H.   Information Systems and Research

33   The BOP's Information System environment includes mainframe,
34   local area network (LAN) and wide area network (WAN) components.

35   The BOP's mainframe software environment exists in an internally-

19

PLAINTIFF LACY DAVIS, III
<u>ADMINISTRATIVE PROCEDURE ACT COMPLAINT</u>, 5 U.S.C. § 701 ET SEQ.,
IN CONJUNCTION WITH 28 U.S.C. § 1331.

AND

<u>AFFIDAVIT</u> OF LACY DAVIS, III,IN SUPPORT.

TABLE OF CONTENTS

JURISDICTION.................................Pages 2 - 4.

INTRODUCTION.................................Pages 4 - 5.

AUTHORITY AND FUNCTIONS OF THE RESPONDENT
WITH RESPECT TO UNITED STATES CODE OFFENDERS
............................................Pages 5 - 8.

EXHAUSTION OF REMEDIES.......................Pages 8 - 10.

THE ISSUES PRESENTED.........................Page 10.

STATEMENT OF FACTS...........................Pages 11 - 12.

**ARGUMENT**

    ISSUES I.

        THE B.O.P.'S INTERPRETATION THAT THE TERM
        "RESIDENTIAL SUBSTANCE ABUSE TREATMENT" UNDER
        18 U.S.C. § 3621(e)(5)(A) MEANS EXCLUSIVELY
        TREATMENT AT A BUREAU TREATMENT FACILITY
        VIOLATES STATUTES 18 U.S.C. §§ 3621(b),
        3621(e)(1), AND 3621(e)(5)(A) CONSTRUED TOGE-
        THER AS A WHOLE.
............................................Pages 12 - 23.

    ISSUE II.

        THE B.O.P. VIOLTED IT'S DUTY UNDER 18 U.S.C.
        §§ 3621(b) AND 3621(e)(1) WHEN IT DENIED
        PLAINTIFF THE REMAINING TWO COMPONENTS OF THE
        BUREAU'S RESIDENTIAL DRUG ABUSE TREATMENT PRO-
        GRAM.
............................................Pages 23 - 28.

    ISSUE III.

        WHETHER THE BUREAU MUST ADHERE TO 18 U.S.C.
        § 3621(e), 28 CFR § 550.58, AND § 5330.10;
        WHICH CONFERS AN OBLIGATION UPON THE B.O.P.
        TO MAKE AVAILABLE TO PLAINTIFF ALL THE COMP-
        ONENTS OF THE RESIDENTIAL DRUG ABUSE INCENT-
        IVE PROGRAM.
............................................Pages 28 - 30.

(i)

RULES AND STATUTES

5 U.S.C. § 701...................................Page 1.

5 U.S.C. § 702 and 707...........................Page

28 U.S.C. § 1331.................................Page

21 U.S.C. § 841(a)(1)............................Page

21 U.S.C. § 841(b)(1)(A)(iii)....................Page

21 U.S.C. § 846.................................Page

18 U.S.C. § 3621(b).............................Passim

18 U.S.C. § 3621(e)(1)..........................Passim

18 U.S.C. § 3621(e)(2)(B).......................Pages 23,26.

18 U.S.C. § 3621(e)(5)(A).......................Passim

18 U.S.C. § 3622.................................Page 27.

28 CFR § 542.12 through 542.18...................Page

28 CFR § 550.56 - 58............................Passim

P.S. § 5330.10..................................Passim

P.S. § 5280.08..................................Page 27.

CASES

Adickes v. S.H. Kness & Co., 398 U.S. 144, 152 (1970)
...............................................Page 7.

Ameria Corp. v. Veneman, 347 F. Supp.2d 225, 226 (M.D.N.C.
2004)..........................................Page 30.

Anderson v. Yungkau, 329 U.S. 482, 485 (1947)
...............................................Page 19.

(ii)

<u>Ballarini v. Schlage Lock Co.</u>, 100 Cal. App.2d Supp. 859, 226 P.2d 771, 773 -74 (1950) ...............................Page 7.

<u>Bell v. Atlantic New Jersey, Inc. v. Tate</u>, 962 F. Supp. 608, 616 n.6 (1997) ...............................Page 30.

<u>Califano v. Sanders</u>, 430 U.S. 99 (1977) ...............................Page 3.

<u>Colo. River Indian Tribes v. Nat. Indian Gaming</u>, 466 F.3d 134, 139 (D.C. Cir. 2006) ...............................Page 31.

<u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 71 n. 5 (2001) ...............................Page 23.

<u>Cort v. Crabtree</u>, 113 F.3d 1081-82 (9th Cir.1997) ...............................Page 6.

<u>Deal v. United States</u>, 508 U.S. 129, 132 (1993) ...............................Page 26.

<u>Downey v. Crabtree</u>, 100 F.3d 662, 666 (9th Cir. 1996) ...............................Page 14.

<u>Evans v. Newton</u>, 382 U.S. 296, 299 (1966) ...............................Page 7.

<u>Exportal Ltda. v. United States</u>, 902 F.2d 45, 50 (D.C. Cir. 1990) ...............................Page 19.

<u>Fornaro v. James</u>, 416 F.3d 63, 66 (D.C. Cir. 2005) ...............................Page 3.

<u>Fowler v. United States Parole Comm'n</u>, 94 F.3d 835, 838 (3rd Cir. 1996) ...............................Page 14.

<u>Goldstein v. S.E.C.</u>, 451 F.3d 873, 878 (D.C. Cir. 2006) ...............................Page 19.

Gose v. Postal Service, 451 F.3d 831, 836 (Fed. Cir. 2006)
..............................................Page 20.

Gustafson v. Alloyd Co., 513 U.S. 561, 569 (1995)
..............................................Page 16.

Haines v. Kerner, 404 U.S. 519, 520-21 (1972)
..............................................Page 32.

In Re Thompson, 418 F.3d 362, 368 (3rd Cir. 2005)
..............................................Page 16.

Irwin v. Hawk, 40 F.3d 347, 349 n.2 (11th Cir. 1994)
..............................................Page 10.

Landry v. Hawk-Sawyer, 123 F.Supp.2d 17, 18-19 (D.D.C.2000)
..............................................Page 3.

Lane v. Pena, 518 U.S. 184, 196 (1996)
..............................................Page 3.

Mallory v. Harkness, 895 F.Supp. 1556, 1564 (S.D. Fla.
1995)
..............................................Page 29.

McClean v. Crabtree, 173 F.3d 1176, 1183 (9th Cir. 1999)
..............................................Pages 26, 27.

McComb v. Wambaugh, 934 F.2d 474, 481 (3rd Cir. 1991)
..............................................Page 20.

Miller v. United States, 964 F.Supp. 15, 20 (D.D.C. 1997)
..............................................Page 32.

Motion Picture Assin of Am., Inc. v. F.C.C., 309 F.3d
796, 801 (D.C. Cir. 2002)
..............................................Page 28.

National RailRoad Passenger Corporation v. Boston Maine
Corp., 503 U.S. 407, 417 (1992)
..............................................Page 16.

<u>National Treasury Employees Union v. Chertoff</u>, 452 F.3d
839, 864 (D.C. Cir. 2006)
.................................................Page 20.

<u>Neb. Dept., Heal & Human v. DEP., Heal & Human</u>, 435 F.3d
326, 330 (D.C. Cir. 2006)
.................................................Page 30.

<u>Norfolk & Western v. A.M. Train Dispatchers</u>, 499 U.S.
473, 475 n.1 (1981)
.................................................Page 7.

<u>PPL Wallingford Energy LLC v. F.E.R.C.</u>, 419 F.3d 1194,
1198 (D.C. Cir. 2005)
.................................................Page 21.

<u>Ragsdale v. Wolverine World Wide,Inc.</u>, 535 U.S. 81,
92 (2002)
.................................................Page 31.

<u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995)
.................................................Page 14.

<u>Robbins v. Reagan</u>, 780 F.2d 37, 42-43 (D.C. Cir. 1985)
.................................................Page 4.

<u>Robinson v. Shell Oil Co.</u>, 70 F.3d 325, 328 (4th Cir. 1995)
.................................................Page 15.

<u>Royster-Clark Agribus, Inc. v. Johnson</u>, 391 F.Supp 2d 21,
25 n.2 (D.D.C. 2005)
.................................................Page 3.

<u>Rublee v. Fleming</u>, 169 F.3d 213, 214 (5th Cir. 1998)
.................................................Page 26.

<u>Service v. Dulles</u>, 354 U.S. 363, 388 (1957)
.................................................Page 28.

<u>Simmat v. BOP</u>, 413 F.3d 1225, 1236-38 (10th Cir. 2005)
.................................................Page 10.

<u>United States v. Heffner</u>, 420 F.2d 809, 811 (4th Cir. 1969)
.................................................Page 30.

<u>United States v. Morton</u>, 467 U.S. 822, 828 (1984)
.................................................Page 18.

Venegas v. Henman, 126 F.3d 760, 763 (5th Cir. 1997)
..............................................Page 27.

Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 245
(3rd Cir. 2005)
...........................................Pages 5,17,27.

CONCLUSION
.............................................Page 31.

RELIEF SOUGHT
.............................................Pages 32 - 34.

CERTIFICATION OF COMPLAINT
.............................................Page 35.

CERTIFICATE OF SERVICE
.............................................Page 36.

ATTACHMENT LIST

ATTACHMENT A    ORIGINAL MARCH 7, 2000, CONTRACT BETWEEN THE
                BUREAU OF PRISONS AND WACKENHUT CORRECTIONS
                CORPORATION( now the "GEO GROUP" ).


AFFIDAVIT ATTACHMENT LIST

ATTACHMENT B    LETTER FROM FOIA

ATTACHMENT C    40 HOUR DRUG PROGRAM CERTIFICATE OF COMPLETION

ATTACHMENT C ONE     BOP DOCUMENT

ATTACHMENT D    GEO DRUG PROGRAM MANUAL

ATTACHMENT D ONE CERTIFICATE OF COMPLETION

ATTACHMENT E    GEO/RCI Attempt at INFORMAL RESOLUTION

ATTACHMENT E NUMBER ONE    Step-1 Form and Response

ATTACHMENT E NUMBER TWO    Step-2 Form and Response

ATTACHMENT E NUMBER THREE    COMPLAINT TO T. Christenson and
                             response.

ATTACHMENT E NUMBER FOUR       Regional Administrative Remedy
                               Appeal and Response.

ATTACHMENT E NUMBER FIVE       Central Office Administrative
                               Remedy Appeal and response.

(vii)

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

**I (a) PLAINTIFFS**

Lacy Davis, III

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

Pro Se (PR)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

# 17348-016

**DEFENDANTS**

Federal Bureau of Prison, ETAL

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

CASE NUMBER  1:07CV00201

JUDGE: Rosemary M. Collyer

DECK TYPE: Pro se General Civil

DATE STAMP: 01/30/2007

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES**
FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)** OR ☒ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☒ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (If not administrative agency review or Privacy Act

| ☐ **G. Habeas Corpus/ 2255** | ☐ **H. Employment Discrimination** | ☐ **I. FOIA/PRIVACY ACT** | ☐ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |
| ☐ **K. Labor/ERISA (non-employment)** | ☐ **L. Other Civil Rights (non-employment)** | ☐ **M. Contract** | ☐ **N. Three-Judge Court** |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

---

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS    ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $** ○    Check YES only if demanded in complaint
**JURY DEMAND:** ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES  ☒ NO    If yes, please complete related case form.

**DATE** 1.30.07    **SIGNATURE OF ATTORNEY OF RECORD** NCD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

forms\js-44.wpd